**Opinion issued December 15, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00665-CV

_____

**LG CHEM AMERICA, INC. AND LG CHEM, LTD., Appellants**

**V.**

**TOMMY MORGAN, Appellee**

---

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 100728-CV**

---

## MEMORANDUM OPINION

This is an interlocutory appeal of the denial of two special appearances.

Appellee, Tommy Morgan, sued multiple defendants, including appellants, LG

Chem America, Inc. (LGC America), a Delaware company with its principal place

of business in Atlanta, Georgia, and LG Chem, Ltd. (LGC), a South Korean company, for injuries Morgan allegedly sustained when a battery manufactured by LGC and marketed, distributed, and sold by LGC America, which was inside an electronic-cigarette device, exploded and caught fire while in his pants pocket. Morgan asserted strict products liability causes of action against both companies.[1] Appellants filed separate special appearances.

After a hearing, the trial court entered orders denying appellants' special appearances. On appeal, appellants challenge the denial of their special appearances, arguing that they lack minimum contacts with Texas necessary for Texas courts to assert personal jurisdiction over them.

We affirm.

## Background

Morgan sued LGC America, LGC, and other defendants in January 2019, alleging that a lithium-ion 18650 battery used in an e-cigarette device "exploded and caught fire" while in his pants pocket, "causing [him] to sustain severe burns and

---

[1] Morgan also asserted causes of action for negligence and gross negligence, breach of express and implied warranties, and violations of the Texas Deceptive Trade Practices–Consumer Protection Act, *see* TEX. BUS. & COM. CODE ANN. §§ 17.41– .63, but all parties agree on appeal that Morgan's lawsuit against LGC and LGC America is based on products liability.

other injuries."[2] Morgan asserted strict products liability claims against LGC and LGC America, alleging that they designed, manufactured, marketed, distributed, and sold the battery and e-cigarette device that injured him and "direct[ed] such products to Texas." According to Morgan, LGC designed and manufactured the battery that injured him and distributed it through its wholly-owned distributor, LGC America, which markets, sells, and distributes LGC's lithium-ion batteries throughout the United States, including in Texas. Morgan further alleged that other defendants manufactured the e-cigarette device, which used LGC's lithium-ion battery, and sold the e-cigarette device—and LGC's battery within it—to Morgan at a store in Brazoria County. Morgan alleged that LGC's battery was defectively manufactured and unreasonably dangerous. He also alleged that neither the e-cigarette device nor LGC's battery included any warnings about foreseeable risks and that he used the e-cigarette device and LGC's battery in a reasonably foreseeable manner for their intended or reasonably anticipated purpose as a battery-powered e-cigarette device.

## A.    LGC's Special Appearance

LGC filed a special appearance challenging the trial court's exercise of personal jurisdiction over it. LGC supported its special appearance with the affidavit

---

[2]    The other defendants included two entities, WISMEC USA and Vapor Sense, and fifty John and Jane Does. These defendants are not parties to this appeal, and they are not integral to our discussion of this case except as otherwise noted.

of a senior manager and authorized representative of the company, averring that it is a Korean company with its headquarters and principal offices in Seoul, South Korea, and that it has never had an office in Texas, is not registered to do business in Texas, has never owned or leased real property in Texas, has never had a registered agent for service of process in Texas, and has never had a telephone number, post office box, mailing address, or bank account in Texas. The senior manager denied that LGC designs or manufactures batteries "for sale to individual consumers as standalone batteries" and denied that LGC itself or through a third party distributes, advertises, or sells the particular type of battery at issue "directly to consumers as standalone batteries" or "as replaceable power cells in e-cigarette or vaping devices." The manager also denied that LGC has conducted business with any defendant other than LGC America, including the defendant that manufactured the e-cigarette device and the defendant that sold the device and LGC's battery to Morgan. Further, LGC denied that the battery that injured Morgan was designed or manufactured in Texas. LGC's manager did not otherwise deny that it manufactures batteries like the one that injured Morgan and that it markets, distributes, and sells those batteries, including through LGC America, to at least some customers in Texas.

Morgan responded that LGC, alone or through LGC America, "targets the U.S. market by selling lithium-ion batteries to various American entities, including

4

but not limited to battery packers and power tool companies throughout the nation."

Morgan produced more than 2,200 pages of spreadsheets that he argued showed:

(1)    168 shipments from [LGC] came through the ports of Houston, Texas[,] and Texas City, Texas;

(2)    111 of the 168 imports were consigned by an [LGC] entity with the vast majority being consigned by its subsidiary, [LGC America];

(3)    a search of all imports from [LGC] to consignees with a Texas address identified 271 shipments to over 30 different companies with locations in the State, 23 of which arrived in the port of Houston and the remaining arrived in non-Texas ports with their ultimate destination being a company in Texas; [and]

(4)    a search of all imports from [LGC] to any Texas address listed as the notifying party showed 823 shipments to over 60 Texas entities, 30 of which arrived in the port of Houston and the remainder arrived via non-Texas ports.

Morgan also produced printouts from LGC's website, which state that, "[i]n 1999, LG Chem succeeded in developing a lithium-ion battery for the first time in Korea," and "[s]ince then, it has continued to increase its sales volume in the battery market," and "LG Chem . . . has led the world lithium-ion battery market . . . ." Morgan also produced printouts from the website of Stanley Black and Decker, which is not a party to the underlying lawsuit, showing that that company has three facilities in Texas and that it lists LGC as one of its "peers in innovation in consumer durables . . . ." Morgan further produced an excerpt from a hearing in another lawsuit involving LGC, in which Morgan argued that "counsel for [LGC] conceded [LGC] ships lithium-ion 18650 batteries directly into Texas," and he produced two orders

5

from another lawsuit in North Carolina involving both LGC and LGC America, which Morgan argues show LGC's attempt to serve the greater United States market for its lithium-ion 18650 batteries. Finally, Morgan produced a document entitled "LG Chem, Ltd. and Subsidiaries" for the time period of "September 30, 2016 and 2015," which Morgan argued showed that LGC wholly owns LGC America, a point that neither LGC nor LGC America dispute.[3] Morgan's trial counsel filed a sworn declaration, stating that each exhibit was a true and correct copy, and LGC did not object to Morgan's evidence.

Based on his pleadings and evidence, Morgan argued that LGC is subject to jurisdiction in Texas courts under a stream-of-commerce-plus theory because LGC ships lithium-ion batteries directly into Texas to Texas customers and therefore has purposefully availed itself of the privileges and benefits of conducting activities in Texas. Morgan further argued that the operative facts of the litigation arose from or are related to LGC's forum contacts because Morgan is a resident of Texas and he "purchased, used, and was injured by [LGC's] battery in Texas." Morgan

---

[3] Morgan used this document to support his response to both LGC and LGC America's special appearances, so this document appears twice in the record on appeal, but both versions appear to be corrupted because all of LGC's "Consolidated subsidiaries" are illegible in both copies. However, neither LGC nor LGC America disputes that LGC wholly owns LGC America.

alternatively requested additional jurisdictional discovery "should [the trial court] determine additional information is needed to rule on [LGC's] Special Appearance."

## B.    LGC America's Special Appearance

LGC America also filed a special appearance, which it supported with a sworn affidavit from its compliance manager, averring that LGC America is incorporated in Delaware and has its principal place of business in Atlanta, Georgia, and that it "has not had any physical presence in the State of Texas since 2013," including owning any real property or having a post office box, bank accounts, employees, officers, or directors in Texas. It conceded that it generates approximately 6.37% of its revenue in Texas. The manager further averred that LGC America sells and distributes—but does not manufacture—various petrochemical materials and products. It denied having ever designed, manufactured, assembled, tested, inspected, or advertised "lithium-ion power cells" in Texas, or having ever sold or distributed "any power cells meant for e-cigarettes or vaping devices" and, thus, that it "could not have designed, manufactured, tested, inspected, or advertised the power cell(s) at issue." The manager also denied having ever conducted business with the other named defendants except for LGC, including the manufacturer of the e-cigarette device and the seller of the device and LGC battery to Morgan. The manager further denied that LGC America authorized anyone else "to advertise, distribute, or sell LG brand power cells in Texas, or anywhere else, for use by

7

individual consumers as power cells in e-cigarette or vaping devices." LGC America's manager did not deny that it marketed, sold, and distributed products for LGC, including batteries similar to the one that allegedly injured Morgan, to at least some customers in Texas.

In response, Morgan relied on much of the same evidence he used to oppose LGC's special appearance, which we discussed above. He argued that LGC America is LGC's wholly-owned distributor for batteries to the United States market, including Texas. He relied on printouts from LGC's website, which state that LGC developed "a lithium-ion battery for the first time in Korea" in 1999, and, "[s]ince then, it has continued to increase its sales volume in the battery market," and "LG Chem . . . has led the world lithium-ion battery market . . . ." Morgan also relied on the illegible printout showing that LGC America is a subsidiary of LGC, which neither LGC nor LGC America disputes, and two orders from a separate North Carolina lawsuit against LGC and LGC America, which Morgan contended showed that LGC serves the greater United States market for its lithium-ion 18650 batteries. Morgan's trial counsel filed a sworn declaration stating that each exhibit was a true and correct copy, and LGC America did not object to Morgan's evidence.

Morgan argued that LGC America did not dispute that "[LGC] ships lithium-ion batteries and other products directly into the State of Texas from Korea and [LGC America]—in its role as shipper and distributor—likely fulfills delivery and

8

distribution of said items both in and throughout [Texas]." Morgan further argued that, "[o]n information and belief, [LGC America] also participates in the delivery of goods directly to the State of Texas." Morgan's response to LGC America's special appearance was similar to his response to LGC's special appearance: he argued that LGC America purposefully availed itself of the Texas market by marketing, selling, distributing, and shipping LGC's lithium-ion 18650 batteries to customers in Texas and that a substantial connection exists between the operative facts of the litigation and LGC America's forum contacts because "Morgan is a resident of Texas" and he "purchased, used, and was injured by [LGC's] battery in Texas." Morgan also asked for additional jurisdictional discovery "should this Court determine additional information is needed to rule on [LGC America's] Special Appearance."

After a hearing, the trial court denied both LGC's and LGC America's special appearances in separate written orders. The record does not indicate that the trial court ruled on Morgan's request for additional jurisdictional discovery, which became moot when the trial court denied the special appearances. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005) ("A case becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome.") (citing *Bd. of Adjustment v. Wende*, 92 S.W.3d 424, 427 (Tex. 2002)). This appeal followed.

9

## Special Appearance

### A.    Standard of Review

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *E.g.*, *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018) (citing *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013)). When, as here, a trial court does not issue findings of fact and conclusions of law with its ruling on a special appearance, we imply all relevant facts necessary to support the judgment that are supported by evidence. *Id.* (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). When the record on appeal includes the clerk's and reporter's records, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Marchand*, 83 S.W.3d at 795 (citations omitted). A no-evidence legal sufficiency challenge fails if the finding is supported by more than a scintilla of evidence. *Id.* (citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)).

### B.    Governing Law

Texas courts may exercise personal jurisdiction over a nonresident defendant if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Bell*, 549 S.W.3d at 558 (quoting *Moncrief Oil*, 414 S.W.3d at 149, and

citing *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007)). The Texas long-arm statute is expressly satisfied if, "[i]n addition to other acts that may constitute doing business," a nonresident: "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state" or if a nonresident "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. "However, allegations that a tort was committed in Texas do not necessarily satisfy the United States Constitution." *Bell*, 549 S.W.3d at 559 (citing *Moncrief Oil*, 414 S.W.3d at 149, and *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005)).

"[F]ederal due process requires that the nonresident must have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A nonresident establishes minimum contacts with a forum when it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Drugg*, 221 S.W.3d at 575 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), and *Holten*, 168 S.W.3d at 784). "[T]he defendant's in-state activities 'must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court.'" *Bell*, 549 S.W.3d at 559 (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)).

11

When determining whether a defendant has purposefully availed itself of the privilege of conducting activities in Texas, we consider three factors:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. . . . Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Id.* (quoting *Moncrief Oil*, 414 S.W.3d at 151); *see TV Azteca v. Ruiz*, 490 S.W.3d 29, 38 (Tex. 2016) (stating that defendant's contacts must be "purposefully directed" towards Texas and "must result from the defendant's own 'efforts to avail itself of the forum'") (citations omitted). A nonresident may purposefully avoid a jurisdiction "by structuring its transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction." *Holten*, 168 S.W.3d at 785 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)). "We assess 'the quality and the nature of the contacts, not the quantity.'" *TV Azteca*, 490 S.W.3d at 38 (quoting *Moncrief Oil*, 414 S.W.3d at 151).

A defendant's contacts may give rise to general jurisdiction or specific jurisdiction. *Bell*, 549 S.W.3d at 559 (citing *Moncrief Oil*, 414 S.W.3d at 150); *M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 885 (Tex. 2017). General jurisdiction, which is not at issue in this case,[4] is established when a

---

[4] Morgan concedes that neither LGC nor LGC America is subject to general personal jurisdiction in this case.

12

defendant's contacts with the state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *M&F Worldwide*, 512 S.W.3d at 885 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For a Texas court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant's contacts with Texas must be purposeful; and (2) the cause of action must arise from or relate to those contacts. *Bell*, 549 S.W.3d at 559 (citation omitted); *accord Brown*, 564 U.S. at 919 (stating that specific jurisdiction requires "'affiliatio[n] between the forum and the underlying controversy,' principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation" and that "specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction'") (citation omitted).

A seller's awareness "that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010) (quoting *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996)). The Texas Supreme Court has held that a finding of purposeful conduct generally requires "some 'additional conduct'—beyond merely placing the product in the stream of commerce—that indicates 'an intent or purpose to serve the market in the forum State.'" *Id.* (quoting *Asahi Metal Indus. Co. v.*

13

*Superior Court of Cal.*, 480 U.S. 102, 112 (1987), *Drugg*, 221 S.W.3d at 577, and

*Holten*, 168 S.W.3d at 786). Examples of such additional conduct include:

(1) designing the product for the market in the forum state, (2) advertising in the

forum state, (3) establishing channels for providing regular advice to customers in

the forum state, and (4) marketing the product through a distributor who has agreed

to serve as the sales agent in the forum state. *Id.* (quoting *Asahi*, 480 U.S. at 112,

and citing *Drugg*, 221 S.W.3d at 577, *Holten*, 168 S.W.3d at 786, and *Kawasaki*

*Steel Corp. v. Middleton*, 699 S.W.2d 199, 201 (Tex. 1985) (per curiam)).

The defendant's purposeful contacts "must be substantially connected to the

operative facts of the litigation or form the basis of the cause of action." *Bell*, 549

S.W.3d at 559–60 (citing *Drugg*, 221 S.W.3d at 585, and *Holten*, 168 S.W.3d at

795); *see Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("For a State to exercise

jurisdiction consistent with due process, the defendant's suit-related conduct must

create a substantial connection with the forum State."). Operative facts are the facts

that "will be the focus of the trial, will consume most if not all of the litigation's

attention, and the overwhelming majority of the evidence will be directed to that

question." *Drugg*, 221 S.W.3d at 585.

In analyzing specific jurisdiction, we focus on the relationship between the

forum, the defendant, and the litigation. *Bell*, 549 S.W.3d at 559 (citing *Moncrief*

*Oil*, 414 S.W.3d at 150); *see Walden*, 571 U.S. at 285 ("[O]ur 'minimum contacts'

14

analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.") (citing *Int'l Shoe*, 326 U.S. at 319, and *Hanson*, 357 U.S. at 251). "[A] defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties," "[b]ut a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286 (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). Specific jurisdiction must be established on a claim-by-claim basis unless all of the asserted claims arise from the same contacts with the forum. *M&F Worldwide*, 512 S.W.3d at 886 (citing *Moncrief Oil*, 414 S.W.3d at 150–51).

When personal jurisdiction is challenged, the plaintiff and the nonresident defendant bear shifting burdens of proof. *Bell*, 549 S.W.3d at 559 (citing *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010)). The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the scope of Texas's long-arm statute. *Id.*; *see Kelly*, 301 S.W.3d at 658 ("Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading."). The trial court may consider the plaintiff's original pleadings as well as his response to the defendant's special appearance in determining whether the plaintiff satisfied his initial burden. *Washington DC Party Shuttle, LLC v. IGuide*

15

*Tours*, 406 S.W.3d 723, 738 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (en banc) (citation omitted); *Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citation omitted). "In conducting our review, we accept as true the allegations in the petition." *Touradji*, 316 S.W.3d at 23 (citing *Pulmosan Safety Equip. Corp. v. Lamb*, 273 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)). If the plaintiff fails to plead facts bringing the defendant within the reach of the long-arm statute, "the defendant need only prove that it does not live in Texas to negate jurisdiction." *Kelly*, 301 S.W.3d at 658–59.

If the plaintiff meets his initial pleading burden, the burden shifts to the nonresident defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Bell*, 549 S.W.3d at 559 (citing *Kelly*, 301 S.W.3d at 658). The defendant can negate jurisdiction on either a factual or a legal basis. *Kelly*, 301 S.W.3d at 659. "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id.* The plaintiff can then respond with his own evidence affirming his allegations, and if he does not present evidence establishing personal jurisdiction, he risks dismissal of his suit. *Id.* Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; that the defendant's contacts with Texas do not constitute purposeful availment; for specific jurisdiction, that the claims do

16

not arise from the contacts with Texas; or that the exercise of jurisdiction offends traditional notions of fair play and substantial justice. *Id.*

"[J]urisdiction cannot turn on whether a defendant denies wrongdoing—as virtually all will. Nor can it turn on whether a plaintiff merely alleges wrongdoing—again as virtually all will." *Bell*, 549 S.W.3d at 560 (quoting *Holten*, 168 S.W.3d at 791). When conducting a jurisdictional analysis, "we must not confuse 'the roles of judge and jury by equating the jurisdictional inquiry with the underlying merits.'" *Id.* (quoting *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 70 (Tex. 2016)).

## C.    Personal Jurisdiction Over LGC

LGC argues that it only placed its batteries into the stream of commerce without any additional conduct showing it intended to serve the Texas market. LGC further argues that it sells its batteries only to "sophisticated manufacturers," denying that it sells its batteries for use in e-cigarette devices by individual consumers like Morgan. LGC contends that without evidence that it directed the specific battery that allegedly injured Morgan into Texas, it is not subject to jurisdiction in Texas. Thus, LGC contends that even if it purposefully directed other, similar batteries into the Texas market, it is not subject to jurisdiction in Texas courts for Morgan's claims against it. In response, Morgan points out that LGC does not dispute that it manufactures and ships into Texas the same type of battery that allegedly harmed

17

him, and he contends that LGC construes its Texas activity too narrowly by arguing it targets only a subset of the Texas market for its batteries.

### 1. Morgan's initial burden to plead sufficient jurisdictional allegations

In his original petition, the live pleading on file when the trial court denied LGC's special appearance, Morgan alleged that he was injured by a battery that LGC "manufactured, marketed, sold, distributed, or otherwise placed into the stream of commerce," and he clarified in his special appearance response that LGC manufactured lithium-ion 18650 batteries like the one that injured him and that it targeted the Texas market for such batteries by selling them to Texas customers through its distributor, LGC America. *See Washington DC Party Shuttle*, 406 S.W.3d at 738 (stating that courts may consider plaintiff's pleadings and response to special appearance in determining whether plaintiff met initial burden to plead sufficient jurisdictional allegations); *Touradji*, 316 S.W.3d at 23 (same). Morgan alleged that he bought an e-cigarette device containing LGC's battery from a store in Brazoria County, that the battery did not include any warning about foreseeable risks, and that he used the e-cigarette device and LGC's battery in a reasonably foreseeable manner for their intended purpose as a battery-powered e-cigarette device. Based on these allegations, Morgan asserted products liability claims against LGC for designing, manufacturing, assembling, marketing, distributing, and selling

defective and unreasonably dangerous batteries without warnings of foreseeable risks to customers in Texas, including him.

As evidence supporting his jurisdictional allegations, Morgan produced voluminous spreadsheets, arguing that they showed LGC frequently ships its products, including lithium-ion 18650 batteries like the one that injured him, through Texas ports and to Texas customers, that many of its products are consigned to LGC America, LGC's wholly-owned distributor, and that hundreds of shipments of LGC's products have been delivered to at least eighty Texas entities.[5] Morgan pointed to website printouts from one particular entity, Stanley Black and Decker, showing the company has facilities in Texas and listing LGC as a "peer[] in innovation in consumer durables . . . ." These allegations are sufficient to meet Morgan's initial burden to show that LGC was doing business in Texas under the long-arm statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042; *Spir Star*, 310 S.W.3d at 871 ("We hold that a manufacturer is subject to specific personal

---

[5]     On appeal, LGC characterizes Morgan's evidence as "unauthenticated," but the record does not reflect that LGC objected to Morgan's evidence in the trial court, and LGC does not offer any argument about it on appeal. A general prerequisite to presenting a complaint for appellate review is that the record must show that the complaint was timely made to the trial court with sufficient specificity and that the trial court ruled or refused to rule on the objection. TEX. R. APP. P. 33.1(a). Had LGC raised its objection in the trial court, Morgan would have had an opportunity to rebut LGC's objection and, if necessary, to cure the defect by supplementing his special appearance evidence. Because LGC did not object to Morgan's evidence in the trial court, this complaint is waived. *See id.*

19

jurisdiction in Texas when it intentionally targets Texas as the marketplace for its products, and that using a distributor-intermediary for that purpose provides no haven from the jurisdiction of a Texas court."). The burden thus shifted to LGC to negate all bases of alleged jurisdiction. *See Bell*, 549 S.W.3d at 559 (citing *Kelly*, 301 S.W.3d at 658).

### 2. Purposeful availment

LGC's only evidence in support of its special appearance was an affidavit of a senior manager and authorized representative who denied that LGC designs or manufactures batteries "for sale to individual consumers as standalone batteries"; denied that LGC distributes, advertises, or sells the type of battery that allegedly injured Morgan directly to consumers or authorizes any third party to do so; denied that LGC conducts business with other defendants except LGC America; and denied that it designed or manufactured the specific battery at issue in Texas. *See Kelly*, 301 S.W.3d at 659 (stating defendant can negate jurisdiction on factual basis by "present[ing] evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations"). Importantly, however, the affidavit did not deny that LGC designed, manufactured, distributed, marketed, or sold the type of battery that allegedly injured Morgan to Texas customers for at least some applications, and it did not deny that LGC America is its distributor in the United States. *See id.* Nor did LGC argue or produce evidence rebutting the voluminous Texas-imports

20

spreadsheets showing that it ships large quantities of its products, including the type of battery that allegedly injured Morgan, to customers in Texas. *See id.* Therefore, Morgan's undisputed jurisdictional allegations and evidence show that LGC designs and manufactures batteries of the type that injured Morgan for the Texas market, and that it markets, sells, and distributes large quantities of such batteries to customers in Texas.

Generally, jurisdiction does not exist over a nonresident that merely places a product into the stream of commerce with awareness that the product could end up in a forum state; there must be some additional conduct indicating an intent or purpose to serve the market in the forum state. *E.g.*, *Spir Star*, 310 S.W.3d at 873. Morgan's undisputed allegations and evidence indicate that LGC designed and manufactured its lithium-ion 18650 batteries for the Texas market, advertised them in Texas, and marketed them in Texas through a distributor that sold them in Texas. *See id.* (stating that examples of additional conduct include: (1) designing product for forum market, (2) advertising in forum, and (3) marketing product through distributor that has agreed to serve as sales agent in forum). Thus, LGC's additional conduct indicates its intent to serve the Texas market for its lithium-ion 18650 batteries, at least to "sophisticated manufacturers."

LGC relies on *J. McIntyre Machinery, Ltd. v. Nicastro* to argue that Morgan's evidence may show that it intended to serve the broader U.S. market but not that it

21

intended to serve the Texas market specifically. *See* 564 U.S. 873, 884 (2011) ("Because the United States is a distinct sovereign, a defendant may in principle be subject to the jurisdiction of the courts of the United States but not of any particular State."). *Nicastro* held that a nonresident defendant that does not engage in activities revealing an intent to benefit from the market of a particular forum state is not subject to personal jurisdiction in that state's courts even if the activity shows an intent to benefit from the broader United States market. *Id.* at 886–87. In that case, a worker who was injured while using a metal-shearing machine brought a products liability action in New Jersey state court against the machine's manufacturer, J. McIntyre, an English company that manufactured the machine in England and sold its machines to customers in the United States generally through an independent company not subject to J. McIntyre's control. *Id.* at 878. The worker presented evidence that no more than four of J. McIntyre's machines—and likely "only [the] one" that injured him—had ever "ended up in New Jersey," but he presented no evidence that J. McIntyre marketed or shipped its machines to New Jersey. *Id.* J. McIntyre's officials had visited the United States to attend annual conventions with its distributor, but the conventions were never in New Jersey. *Id.* Because these contacts were insufficient to show J. McIntyre intended to invoke or benefit from the protection of New Jersey's laws, even if sufficient to show it intended to benefit from the broader

22

U.S. market, New Jersey courts could not exercise personal jurisdiction over J. McIntyre in Nicastro's suit against it. *Id.* at 886–87.

Here, as we discussed above, there is sufficient evidence that LGC intended to serve the Texas market. Unlike J. McIntyre, the evidence shows that LGC marketed and shipped many lithium-ion 18650 batteries into Texas through a wholly-owned distributor that sold LGC's batteries in Texas. *See id.* at 878 (stating that English company was not subject to jurisdiction in New Jersey because no evidence showed it marketed or shipped its machines to New Jersey, even if it sold its machines in United States through independent distributor not subject to its control); *accord Spir Star*, 310 S.W.3d at 873 (holding that exercising jurisdiction over nonresident requires "some 'additional conduct'—beyond merely placing the product in the stream of commerce—that indicates 'an intent or purpose to serve the market in the forum State'"). LGC designed and manufactured its batteries for the Texas market and marketed and sold and distributed them here. These contacts are more significant than the single (or possibly four) machines that wound up in New Jersey even though J. McIntyre did not market or ship its machines there. *See Nicastro*, 564 U.S. at 886–87. Because the evidence indicates an intent to serve the Texas market specifically, and not just the United States more broadly, *Nicastro* does not support LGC's position. *See id.*

LGC also argues that it is not subject to jurisdiction because there is no evidence it shipped the actual battery that injured Morgan to Texas. We disagree. Morgan alleged that he was injured by one of LGC's batteries and he alleged and presented evidence that LGC manufactures and designs the same types of batteries and markets, sells, and distributes them to Texas. The burden shifted to LGC to negate this allegation, which it did not do. *See Bell*, 549 S.W.3d at 559 (citing *Kelly*, 301 S.W.3d at 658); *Kelly*, 301 S.W.3d at 659 (stating defendant can negate jurisdiction on factual basis by "present[ing] evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations"). Thus, we presume for purposes of our analysis that LGC shipped the battery that injured Morgan to Texas. Morgan's evidence showed that LGC, directly or indirectly through its distributor, marketed and distributed numerous lithium-ion 18650 batteries to customers in Texas, and it is reasonable to subject it to suit for Morgan's alleged injury from one of its batteries in Texas. *See Spir Star*, 310 S.W.3d at 874 ("[I]f the sale of a product of a manufacturer . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer . . . to serve *directly* or *indirectly*, the market for its products in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.") (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

LGC also argues that it is not subject to jurisdiction in Texas because it does not have a relationship with the defendants that manufactured the e-cigarette device and sold the device and LGC battery to Morgan. But even so, we are concerned only with LGC's conduct, not with the unilateral activity of third persons. *See Bell*, 549 S.W.3d at 559 (stating that only defendant's forum contacts are relevant, not unilateral activity of third person). When a foreign manufacturer "specifically targets Texas as a market for its products," as LGC did, "that manufacturer is subject to a product liability suit in Texas based on a product sold here, even if the sales are conducted through a Texas distributor or affiliate." *See Spir Star*, 310 S.W.3d at 874 (citing *Asahi*, 480 U.S. at 112). "In such cases, it is not the actions of the Texas intermediary that count, but the actions of the foreign manufacturer who markets and distributes the product to profit from the Texas economy." *Id.*; *accord Bell*, 549 S.W.3d at 559 ("[O]nly the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person.") (quoting *Moncrief Oil*, 414 S.W.3d at 151).

Morgan's claims are not based on the manner in which LGC's batteries were transported into Texas or the chain of distribution, but rather on LGC's own conduct in manufacturing allegedly defective lithium-ion 18650 batteries and marketing, selling, and distributing them to customers in Texas, including him, through its distributor, LGC America. Thus, Morgan bases his claims on LGC's own conduct.

*See Bell*, 549 S.W.3d at 559. Furthermore, manufacturing its batteries for the Texas market and marketing, selling, and distributing them to Texas customers is purposeful conduct—not random, fortuitous, or attenuated conduct—from which LGC profited. *See id.* ("Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. . . . Finally, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction."). We conclude that LGC purposefully availed itself of the privilege of conducting activities in Texas, thus invoking the benefits and protections of its laws. *See Drugg*, 221 S.W.3d at 575 (quoting *Hanson*, 357 U.S. at 253, and *Holten*, 168 S.W.3d at 784).

### 3.     Arise from or relate to

Due process requires that Morgan's claims arise from or relate to LGC's contacts with Texas before Texas courts can exercise specific jurisdiction over LGC. *See, e.g.*, *Bell*, 549 S.W.3d at 559. This requires a substantial connection between the operative facts of the litigation and the defendant's purposeful forum contacts. *Id.* at 559–60. Morgan asserted products liability claims against LGC, which will require proof that LGC's battery was in a defective or unreasonably dangerous condition when it was sold and that the condition caused his injury. *See Ranger Conveying & Supply Co. v. Davis*, 254 S.W.3d 471, 479 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (stating elements of products liability action: (1) defendant placed product into stream of commerce; (2) product was in defective or

26

unreasonably dangerous condition; and (3) causal connection existed between condition and plaintiff's injuries) (citing *Houston Lighting & Power Co. v. Reynolds*, 765 S.W.2d 784, 785 (Tex. 1988), and *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 376 (Tex. 1978)). Whether the batteries were unreasonably dangerous is generally a fact question for a jury to decide. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 432 (Tex. 1997) (citing *Turner v. Gen. Motors Corp.*, 584 S.W.2d 844, 848 (Tex. 1979)).

LGC argues that Morgan's claims did not arise from or relate to its Texas contacts because it manufactured its batteries for and advertised, distributed, and sold them only to "sophisticated manufacturers," not to individuals consumers like Morgan for use in e-cigarette devices. As an initial matter, LGC has not disputed Morgan's allegation that the e-cigarette device and battery that injured him were not sold with warnings against the use of LGC's battery in an e-cigarette device or by an individual consumer. Moreover, LGC's affidavit did not define "sophisticated manufacturer,"[6] explain why the manufacturer of the e-cigarette device, in which LGC's battery was used when it allegedly exploded and caught fire, was not a "sophisticated manufacturer," or deny that "sophisticated manufacturers" who use

---

[6]     The affidavit does not mention "sophisticated manufacturers," only "sophisticated companies," a term not defined in the affidavit.

27

LGC's batteries in their products would in turn sell their products using LGC's batteries to individual consumers.

But more importantly, the issue of whether LGC's batteries were used in a foreseeable manner or were misused goes to the merits of a products liability action because "[f]oreseeability of risk of harm is a requirement for liability for a defectively designed product . . . ." *See Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 257 (Tex. 1999) (citation omitted). Although products do not generally need to be designed to reduce or avoid unforeseeable risks of harm, "the fact that the foreseeable risk of harm is due to a misuse of the product, rather than an intended use, is not an absolute bar to liability" but is instead "a factor that must be considered in allocating responsibility for the injury." *Id.* (citation omitted). "Jurisdiction cannot turn on whether a defendant denies wrongdoing—as virtually all will. Nor can it turn on whether a plaintiff merely alleges wrongdoing—again as virtually all will." *Bell*, 549 S.W.3d at 560 (quoting *Holten*, 168 S.W.3d at 791).

In this interlocutory review of LGC's special appearance, we are concerned only with whether Morgan's claims arise from LGC's forum contacts, not with the merits of Morgan's claims. *See id.* ("[W]e must not confuse 'the roles of judge and jury by equating the jurisdictional inquiry with the underlying merits.'") (quoting *Searcy*, 496 S.W.3d at 70). Such an inquiry properly focuses on LGC's forum contacts, not on the identity and unilateral activity of third-party purchasers of

28

LGC's batteries. *See id.* at 559 ("[O]nly the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person."). Morgan's undisputed allegations and evidence show that LGC designed and manufactured its lithium-ion batteries for customers in Texas and marketed, sold, and distributed them to Texas customers, and that Morgan's claims arise from or relate to the manufacture, marketing, and sale of LGC's batteries in Texas, which injured Morgan in Texas. *See id.*

LGC relies on *Bristol-Myers Squibb Co. v. Superior Court of California* to argue that it could not expect to be sued in Texas by Texas consumers who acquire its batteries and use them in a manner not intended by LGC. *See* 137 S. Ct. 1773 (2017). Bristol-Myers was a pharmaceutical company that was incorporated in Delaware, headquartered in New York, and maintained substantial operations in New York and New Jersey. *Id.* at 1777–78. It sold a prescription drug, Plavix, in California and engaged in business activities there, including having research and laboratory facilities with about 160 employees and approximately 250 sales representatives in the state, but it did not develop Plavix in California or manufacture, package, or work on regulatory approval in California. *Id.* at 1778. Numerous California residents and nonresidents filed a class-action products liability lawsuit against Bristol-Myers in California, alleging that Plavix damaged their health. *Id.* The nonresident plaintiffs did not allege that they obtained Plavix in

29

California or through California physicians or that they were injured or treated for their injuries in California. *Id.*

Bristol-Myers challenged jurisdiction in California courts over the claims by the nonresident plaintiffs only—but not the claims by the resident plaintiffs. *Id.* The California Supreme Court affirmed a finding of specific jurisdiction over the nonresident plaintiffs' claims against Bristol-Myers, applying a sliding-scale approach that relaxed the connection between a defendant's forum contacts and the specific claims at issue if a defendant had extensive, though unrelated, contacts. *Id.* at 1778–79. The United States Supreme Court disagreed, rejecting the sliding-scale approach to jurisdiction. *Id.* at 1781. The Court held that California courts lacked specific jurisdiction over the nonresident plaintiffs' claims against Bristol-Myers, reasoning that the nonresident plaintiffs could not rely solely on their relationship to the resident plaintiffs, who were prescribed Plavix in California and who ingested it, were injured by it, and were treated for it in California. *Id.* at 1781–82, 1783; *accord Walden*, 571 U.S. at 286, 291 (stating that "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction" and that where relevant conduct occurred entirely in other state, mere fact that conduct affected plaintiffs with connection to forum state did not confer jurisdiction). Nor could the nonresident plaintiffs rely on Bristol-Myers's conducting research in California on matters unrelated to Plavix, which the Court noted was irrelevant to the jurisdictional

30

inquiry. *Bristol-Myers Squibb*, 137 S. Ct. at 1781. The Court distinguished the nonresidents' claims from the residents' claims, stating that the former "are not California residents[,] . . . do not claim to have suffered harm in that State[,] [and,] as in *Walden*, all the conduct giving rise to the nonresidents' claims occurred elsewhere." *Id.* at 1782.

LGC misreads the import of *Bristol-Myers Squibb*, which was that Bristol-Myers could not have expected to be sued in California by nonresident plaintiffs who were not prescribed Plavix by California physicians or sold Plavix in California, did not ingest Plavix in California, and were not treated for their alleged Plavix-related injuries in California, even though Bristol-Myers sold Plavix to residents in California and could expect to be sued by them there. *See id.* at 1781–82. Here, Morgan does not rely on his relationship to other parties; he is a resident of Texas, he bought and used the LGC battery that allegedly injured him in Texas, and he was allegedly injured and treated for his injury in Texas. Thus, unlike the nonresident plaintiffs in *Bristol-Myers Squibb*, Morgan does not rely on a sliding-scale approach to jurisdiction and *Bristol-Myers Squibb* provides no support for LGC's position.

In its reply brief, LGC argues that *Moki Mac River Expeditions v. Drugg* supports a lack of substantial connection between its forum contacts and the operative facts of Morgan's claims. *See* 221 S.W.3d at 585 (holding that, to support exercise of specific jurisdiction, substantial connection must exist between

31

nonresident defendant's forum contacts and operative facts of litigation). We disagree. *Moki Mac* did not involve products liability claims, as this case does, but rather involved claims of negligence and intentional and negligent misrepresentation against Moki Mac, a nonresident river-rafting company, arising from the plaintiffs' son's fatal injury while hiking on Moki Mac's guided rafting tour in Arizona. *Id.* at 573. The plaintiffs argued that Moki Mac misrepresented the safety of its tours in promotional materials it sent to the plaintiffs at their home in Texas, and that but for those misrepresentations, they would not have sent their son on the rafting tour. *Id.* at 576. The Texas Supreme Court rejected the plaintiffs' argument that but-for causation should be the standard in special appearances, finding that "the but-for test [is] too broad and judicially unmoored to satisfy due-process concerns." *Id.* at 581. Instead, the court held that a substantial connection must exist between a nonresident defendant's Texas contacts and the operative facts of the litigation before Texas courts may exercise jurisdiction over the nonresident. *Id.* at 585 (citing *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 229–33 (Tex. 1991), and *Rush*, 444 U.S. at 329). The court concluded that the operative facts of the plaintiffs' negligence and misrepresentation claims were not substantially connected to the hike in Arizona because "[o]nly after thoroughly considering the manner in which the hike was conducted will the jury be able to assess the [plaintiffs'] misrepresentation claim." *Id.* "In sum, 'the [alleged

32

misrepresentation] is not the subject matter of the case . . . nor is it related to the operative facts of the negligence action.'" *Id.* (quoting *Rush*, 444 U.S. at 329).

LGC argues that "the absence of a substantial connection is even more pronounced in this case than it was in *Moki Mac*" because "the plaintiffs' allegation of reliance made the promotional materials at least a colorable but-for cause of the accident." However, *Moki Mac* rejected a but-for causation standard for special appearances as "too broad and judicially unmoored to satisfy due-process concerns," so it is irrelevant whether Morgan sufficiently alleged a but-for cause of his injuries. *See id.* at 581. As we discussed above, Morgan has alleged that a substantial connection exists between LGC's forum contacts and the operative facts, which is the relevant inquiry. *See Bell*, 549 S.W.3d at 559–60 (citing *Drugg*, 221 S.W.3d at 585, and *Holten*, 168 S.W.3d at 795).

We conclude that Morgan's products liability claims for the LGC battery that allegedly exploded and injured him in Texas arises from or relates to LGC's conduct in designing and marketing its batteries for the Texas market, and marketing, selling, and distributing them to customers here. Based on its forum activities, LGC could reasonably anticipate being called into a Texas court when an allegedly defective and unreasonably dangerous battery causes an injury in Texas. *See id.* at 559.

33

**D.    Personal Jurisdiction Over LGC America**

LGC America's arguments on appeal are mostly identical to LGC's arguments. For example, LGC America argues that: (1) it did not sell LGC's batteries to individual customers as replacement batteries for e-cigarette devices, but only to sophisticated manufacturers; (2) the evidence only shows LGC America's intent to serve the United States market as a whole, not the Texas market specifically; (3) Morgan bought the LGC battery from a third party with whom LGC America has no relationship and to whom LGC America never sold any batteries; and (4) Morgan presented no evidence that LGC America distributed the actual battery that injured him into Texas. We reject these arguments for the same reasons we discussed above regarding LGC's identical arguments. *See M&F Worldwide*, 512 S.W.3d at 886 (stating appellate courts generally review personal jurisdiction on claim-by-claim basis except where plaintiff's claims arise from same jurisdictional contacts).

Morgan's original petition alleged that LGC or LGC America manufactured, marketed, distributed, sold, and placed into the stream of commerce the battery that injured him. Morgan argued in his special appearance response that LGC America markets, distributes, and sells LGC's batteries to Texas, that LGC America "likely fulfills delivery and distribution" of power cells in Texas, and that, "on information and belief, [LGC America] also participates in the delivery of goods directly to the

State of Texas." He further alleged that he bought one of those batteries in Texas, that it did not have a warning label, that he used it for its intended or reasonably anticipated use, and that he was injured when it exploded and caught fire in his pants pocket in Texas. Thus, Morgan met his initial burden to plead allegations bringing LGC America within the Texas long-arm statute. *See Spir Star*, 310 S.W.3d at 873 (stating that marketing product in forum is additional conduct beyond merely placing product into stream of commerce indicating intent or purpose to serve market in forum). The burden thus shifted to LGC America to negate all bases of jurisdiction alleged by Morgan. *See Bell*, 549 S.W.3d at 559 (citing *Kelly*, 301 S.W.3d at 658).

LGC America's evidence consisted only of an affidavit from its compliance manager, who denied that LGC America designed, manufactured, or advertised "lithium-ion power cells" in Texas, that it sold or distributed "any power cells meant for e-cigarettes or vaping devices," including to Texas, or that it authorized any third party to do so. The manager did not deny, however, Morgan's allegations that LGC America marketed, sold, and distributed LGC's batteries to customers in Texas beyond denying that it sold or distributed "any power cells meant for e-cigarette or vaping devices." The manager conceded that LGC America generated approximately 6% of its revenue from Texas. Because LGC America did not meet its burden to negate these jurisdictional allegations, we consider them true for

35

purposes of our review.[7] *See id.*; *Touradji*, 316 S.W.3d at 23 (citing *Lamb*, 273 S.W.3d at 839).

These allegations are sufficient to show that LGC America purposefully availed itself of the benefits and privileges of Texas laws and that Morgan's claims arise from or relate to LGC America's forum contacts. *See Bell*, 549 S.W.3d at 559. We disagree with LGC America that Morgan attempts to impute LGC's contacts to it. Morgan relies on LGC America's own contacts with Texas by marketing, selling, and distributing LGC's batteries to customers in Texas, which is additional conduct beyond placing a product into the stream of commerce that indicates LGC America's intent to serve the Texas market. *See Spir Star*, 310 S.W.3d at 873. Therefore, we conclude that LGC America purposefully availed itself of the privilege of conducting activities in Texas, thus invoking the benefits and protections of Texas laws. *See Drugg*, 221 S.W.3d at 575.

---

[7] For the first time in its reply brief, LGC America argues that "Morgan did not allege that [LGC America] so much as touched the lithium-ion power cell he purchased from a vaping retailer. And [LGC America's] undisputed evidence negates the possibility that it ever sold the product. This ends the inquiry." We disagree. Generally, arguments raised for the first time in reply briefs are waived and need not be considered by this Court. *E.g.*, *McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citations omitted). But even if LGC America did not waive this argument, the face of Morgan's pleadings and LGC America's supporting affidavit belie LGC America's argument.

Morgan's claims also arise from or relate to LGC America's forum contacts. Distributors and sellers of third-party manufactured products can be held strictly liable in a products liability action for putting a defective or unreasonably dangerous product into the stream of commerce. *New Tex. Auto Auction Servs., L.P. v. Gomez De Hernandez*, 249 S.W.3d 400, 403–04 (Tex. 2008). LGC America did not present any evidence that it did not market, distribute, and sell lithium-ion 18650 batteries like the one that allegedly injured Morgan to customers in Texas. The operative facts of Morgan's claims against LGC America will focus on the LGC battery that he bought in Texas and which exploded and caught fire in Texas, injuring Morgan in Texas. The operative facts of Morgan's claims thus arise out of the LGC batteries that LGC America marketed, sold, and distributed to customers in Texas, including Morgan. *See Bell*, 549 S.W.3d at 559.

We conclude that LGC America's purposeful contacts with Texas justify a conclusion that it could reasonably anticipate being called into a Texas court when one of LGC's batteries that it marketed, distributed, and sold is alleged to be defective or unreasonably dangerous. *See id.*

E.    **Traditional Notions of Fair Play and Substantial Justice**

Neither LGC nor LGC America argues that asserting jurisdiction over it would offend traditional notions of fair play and substantial justice, much less presents "a compelling case that the presence of some consideration would render

37

jurisdiction unreasonable" as was required to defeat jurisdiction. *See Spir Star*, 310

S.W.3d at 878–79 (quoting *Guardian Royal*, 815 S.W.2d at 231). A party waives an

issue by not briefing it. *See* TEX. R. APP. P. 38.1(f), (i); *DiGiuseppe v. Lawler*, 269

S.W.3d 588, 597 n.10 (Tex. 2008) ("Ordinarily, failure to brief an argument waives

the claimed error.") (citation omitted). Because appellants did not brief the issue, we

conclude that it is waived. *See* TEX. R. APP. P. 38.1(f), (i); *DiGiuseppe*, 269 S.W.3d

at 597 n.10; *see also Spir Star*, 310 S.W.3d at 878 ("Only in rare cases . . . will the

exercise of jurisdiction not comport with fair play and substantial justice when the

nonresident defendant has purposefully established minimum contacts with the

forum state.") (citing *Guardian Royal*, 815 S.W.2d at 231).

We therefore hold that the trial court did not err in denying LGC's and LGC

America's special appearances.

We overrule appellants' issues.[8]

---

[8] Because we overrule appellants' issues and affirm the trial court's orders denying their special appearances, we do not decide Morgan's "conditional cross point," asking the Court to remand for additional jurisdictional discovery "should this Court determine the trial court erred in denying" the special appearances.

## Conclusion

We affirm the trial court's orders denying LGC's and LGC America's special appearances. We dismiss any pending motions as moot.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Hightower, and Countiss.